flUNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| RAY M. HARRISON, *Individually and on behalf of others similarly situated* <br>　　　　　Plaintiff, <br><br>　　　v. <br><br>FIRST INDEPENDENCE BANK, <br><br>　　　　　Defendant. | Case No.: 5:09-cv-12684-JCO-DAS <br><br> Judge John C. O'Meara <br><br> Magistrate Judge Donald A. Scheer |

**JOINT MOTION FOR PRELIMINARY
APPROVAL OF A CLASS ACTION SETTLEMENT**

Plaintiff Ray M. Harrison and Defendant First Independence Bank hereby move this Court for an order: (1) certifying the proposed Settlement Class under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only; (2) preliminarily approving all terms and conditions of the proposed Class Action Settlement Agreement and Release (the "Settlement Agreement"); (3) approving and directing Notice to the Class Members; and (4) setting dates for submitting claims, exclusions ("Opt-Outs"), objections and a Final Approval Hearing.

In support of this motion, the parties state as follows:

1. This case arises out of Defendant's alleged failure to provide on-machine posted notice to consumer patrons of a funds withdrawal fee charged to non-customers at its automated teller machines at the following locations (the "Subject ATMs"), as allegedly required by the Electronic Funds Transfer Act, 15 U.S.C. §1693 et seq. (the "Act").

| | |
|---|---|
| 93361104 | Greektown Branch - 400 Monroe - Detroit, MI 48226 |
| 9336Y002 | Fishbones - 23722 Jefferson - St Clair Shrs, MI 48826 |
| 9336Y003 | Holiday Inn Express - 1020 Washington - Detroit, MI 48226 |
| 9336Y007 | Pegasus - 558 Monroe - Detroit, MI 48226 |
| 9336Y008 | Stroh's - 300 Joseph Campau - Hamtramck, Mi 48207 |
| 9336Y010 | U of D Dental School - 2700 MLK Jr Blvd - Detroit, MI 48208 |
| 9336Y011 | Marquette Building - 243 W Congress - Detroit, MI 48226 |
| 9336Y015 | U of D Law School - 651 E Jefferson - Detroit, MI 48207 |
| 93362202 | Int'l Bldg 400 Monroe - 1St Floor Greektown - Detroit, MI 48226 |
| 93362206 | Atheneum - 1000 Brush Ave - Detroit, MI 48226 |
| 93369001 | Detroit Northwest Precinct - 11450 Warwick - Detroit, MI 48228 |
| 93362408 | Motor City - 2901 Grand River Ave - Detroit, MI 48201 |

| 93362409 | Motor City - 2901 Grand River Ave - Detroit, MI 48201 |
| --- | --- |
| 93362411 | Motor City - 2901 Grand River Ave - Detroit, MI 48201 |
| 93362412 | Motor City - 2901 Grand River Ave - Detroit, MI 48201 |
| 93362413 | Motor City - 2901 Grand River Ave - Detroit, MI 48201 |
| 93362414 | Motor City - 2901 Grand River Ave - Detroit, MI 48201 |

2. Counsel for Plaintiff and Defendant have reviewed and analyzed the legal and factual issues presented in this case and the risks and expenses likely associated with litigating this case to conclusion. Although Plaintiff's counsel believes Defendant's liability to be clear in this case, Defendant strongly disputes this and the parties recognize that there is significant risk and expense in proceeding through litigation of Plaintiff's claims, including the adjudication of Plaintiff's class allegations. Further, Plaintiff's counsel recognizes that, although the Act affords Plaintiff and the class a potential statutory award in addition to their actual damages, the Act caps the potential statutory award at a figure that exacerbates the risk of protracted class litigation. The parties further recognize that significant practical barriers exist simply to ascertain the identify of the non-customer cardholders who used the Subject ATM during the class period, which would likely require issuance of subpoenas to each of the many financial institutions that issued the cards used by class members.

3. Because of these risks, the parties spent a considerable amount of time from January 2011 to the present discussing the possibility of settlement of both Plaintiff's claims and those of the class.

4. In the course of those discussions, the parties have shared information regarding the relative strengths and weaknesses of their cases. Plaintiff's counsel has learned that, during the year preceding the ATM withdrawal conducted by Plaintiff, 130,700 transactions involving an estimated 40-60,000 different non-customer cardholders were conducted at the Subject ATMs. Although Plaintiff believes that his evidence of Defendant's violation of the Act may be conclusive, Plaintiff may not be able to establish the length of any alleged violation, a fact that typically impacts the amount of statutory penalties awarded in cases brought under the Act. Plaintiff's counsel is aware of, and has considered, typical defenses in similar cases which could provide a significant defense in this case or, at the very least, mitigate statutory penalties, including the defense that a sign posted prior to Plaintiff's withdrawal had been removed and/or vandalized by a third party without Defendant's knowledge or

consent. Further, neither party disputes that at all times the Subject ATMs contained an "on the screen" notice of the fee charged to non-customers, in compliance with 15 U.S.C. § 1693b(d)(3)(B)(ii). Consequently, Defendant contends that neither the Plaintiff nor any of the settlement class he represents have suffered any actual harm or damages as a result of the absence of an on-the-machine posted notice, and the existence of only an "on the screen" fee notice on the Subject ATM is consistent with the FDIC's June 2006 Compliance Examination Handbook (the "Handbook"), which expressly gives "the ATM operator the choice of either posting the notice that a fee will be charged and the amount of the fee in a prominent and conspicuous location, or in the alternative, providing such notice on the screen." *See Helkowski v. Sewickley Savings Bank*, 2009 U.S. Dist. LEXIS 96134, at *18 (W.D. Pa. Oct. 15, 2009). Defendant contends that such exclusive "on the screen" notice is also consistent with the language of the Act itself, which has "no conjunctive term connecting" the on-the-machine and on-the-screen ATM fee notices. *Id*. at *14 (citing 15 U.S.C. § 1693b(d)(3)(B)(i) and (ii)).

5. Given the risks and expense of litigation, the parties have agreed to a settlement of Plaintiff's claims. The terms of the parties' proposed settlement and the arguments in support thereof are set forth fully in the following paragraphs, as well as the proposed Settlement Agreement (Exhibit 1) to this Joint Motion.

6. The parties have stipulated to certification of the following Settlement Class for settlement purposes only: All persons who, from June 18, 2008 to June 17, 2009, were charged a transaction fee for making withdrawal(s) from a personal (not business) account using the automated teller machine operated by First Independence Bank at the locations specified in paragraph (1) above.

7. Plaintiff meets all of the requirements enumerated in Federal Rule 23(a) to certify this case as a class action:

> (a) Numerosity. The class is so numerous in this case that joinder of all members would be impracticable. According to Defendant's records, approximately 40-60,000 separate non-customer cardholders conducted 130,700 withdrawal transactions at the Subject ATMs during the class period, although it would require issuance of subpoenas to a large number of separate financial institutions to determine which of those cardholders are "consumers" within coverage of the Act and, hence, within the Class itself.
>
> (b) Commonality. Essentially all of the issues of law and fact in this matter are common to the class. This case involves standardized conduct directed toward the entire class, and a common nucleus of operative fact exists. The factual and legal questions

applicable to Plaintiff's case of whether Defendant failed to provide necessary disclosures at the relevant ATMs are identical to those of each absent class member.

(c) Typicality. The claims of Plaintiff are typical of the claims of the entire class. Plaintiff's claim that he was charged $2.75 for a transaction at the relevant ATM and that there was no on-machine disclosure regarding non-customer transactions fees is factually and legally indistinguishable from the claims of the class members.

(d) Adequacy of Representation. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has no claim that conflicts with a claim of any absent class member, and Plaintiff has sufficient interest in the outcome of this action to ensure vigorous advocacy. As set forth above and more fully in the paragraphs below, Plaintiff was a vigorous advocate for the rights of the absent class members throughout the settlement process as evidenced by the settlement terms and potential recovery by class members in view of their actual damages. Plaintiff and the class members all have claims of equal or similar strength because the facts for each class member would be the same, as would be the applicable law and expected potential recovery. Plaintiff has no knowledge of any potential class member and has communicated and participated in thorough discussions with his counsel regarding the litigation and settlement. Moreover, Plaintiff's counsel is competent, experienced, and qualified to represent the interests of the class. Plaintiff's counsel has practiced law for approximately 30 years and has prosecuted multiple class actions alleging violations of the Electronic Funds Transfer Act. Plaintiff's counsel served for 10 years in the United States Department of Justice, 7-1/2 as an Assistant United States Attorney and two as a Deputy Assistant Attorney General in the Office of Policy Development; served for two years as Staff Director for Oversight and Investigations for the U.S. House Committee on Veterans Affairs; and has worked on many class actions during his 15-plus years in private practice with the law firms of Debevoise & Plimpton in New York City and Dickstein Shapiro in Washington, DC, and in his own practice.

8. In addition, Plaintiff meets all of the requirements enumerated in Federal Rule 23(b)(3) to certify this case as a class action:

(a) Predominance. Common questions of law and fact predominate this action because the factual and legal issues faced by Plaintiff and the class members are identical. Those questions include (i) whether Defendant posted on-machine notice of the transaction fee, (ii) whether Defendant charged a withdrawal fee, (iii) whether Defendant has any defenses; and (iv) whether Defendant violated the Electronic Funds Transfer Act 15 U.S.C. §1693 et seq.

(b) Superiority. A class action is superior to all other available methods for the adjudication of this controversy. The class device presents the most efficient means of adjudicating the rights of the class members, of whom there are potentially 40-60,000, presumably most, if not all, of whom are unaware of their rights and thus would not undertake litigation on their own. In addition, the costs of pursuing individual litigation in this matter are likely prohibitive. Under the terms of the Act, potential class members who opt to bring an individual action would be limited to actual damages and a statutory penalty not to exceed $1,000.00. It is very unlikely that class members would pursue individual actions to receive the protections and relief contemplated by the Act and that will be afforded them through class adjudication.

9. Pursuant to the Settlement Agreement, the parties have agreed that Defendant will establish an Escrow Amount of $190,000.00. The Escrow Amount shall be disbursed as follows, pursuant to Section 2.3 of the Settlement Agreement:

(a) Payment to Class Representative. The Class Representative will receive $2,000.00 for his individual claims and as an incentive award for his services as Class Representative.

(b) Payment to Class Counsel. Class Counsel shall receive $40,000.00 in attorneys' fees and costs. This payment is subject to Court approval and Defendant agrees not to object to the Court awarding this amount to Class Counsel. This amount is 27 percent of the estimated amount of the settlement fund available for class recovery after deduction of the award to Plaintiff and the payment to Class Counsel.

(c) Notice Costs. The costs of published notice in The Detroit News/Detroit Free Press, posted notice on the subject ATM referring to the website, website notice, and settlement administration will also be deducted from the Settlement Fund. Plaintiff's counsel estimates that the cost of class notice and administration of the settlement will be no more than $5,000.00.

(d) Class Recovery. The amount remaining in the Escrow Amount after deducting the amounts set forth in paragraphs (a), (b) and (c) above is equal to approximately $143,000. Participating Claimants will receive $100.00 each, or their pro rata share of the settlement fund in the event the number of Participating Claimants is such that the pro rata share of each Participating Claimant is less than $100.00. Counsel believes this relief to be fair and reasonable to the absent class members when the following factors are accounted for: the risks of further litigation; actual damages suffered by the absent class members; costs of prosecution of individual actions; and the potential statutory recovery under the Act. Counsel for Plaintiff notes that, given the number of claims made in other ATM cases, it is highly likely that each claimant will receive the full $100.00. Counsel for Plaintiff further notes that for transactions conducted at Defendant's ATMs located in the Motor City Casino, which are a large majority of the total transactions, Motor City Casino, not Defendant, received most of the fees from the transactions. Plaintiff took this fact into account in agreeing to the per claim amount of $100.00.

(e) Reverter. Any money remaining in the Escrow Amount, after payments are made pursuant to paragraphs (a) through (d) above, will be distributed as follows: any amount remaining up to $20,000.00 shall be donated as a *cy pres* to the Karmanos Cancer Institute; any further amount remaining up to $10,000.00 shall be donated as a *cy pres* to Freedom Institute, 15800 W. McNichols #224, Detroit, Mich 48235 (Phone 313-347-2834); and any further remaining amount shall be returned to Defendant. All such distributions shall be made shall be made within thirty (30) days after determination and final payment of all settlement amounts.

10. The parties have agreed on the forms of Class Notice to be given to Class Members, pursuant to Section 2.5 of the Settlement Agreement: publication notice in The Detroit News/Detroit Free Press (Exhibit B to the Settlement Agreement), posted notice on the ATMs at Issue (Exhibit C to the Settlement Agreement), and website notice (Exhibit D to the Settlement Agreement).

11. The parties submit that the proposed forms of Class Notice meet the requirements of Rule 23. Rule 23(c)(2)(B) states, "For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The parties submit that newspaper publication notice (covering the geographic area in which the ATMs are located), posted notice, and website notice, as set forth in Section 2.5 of the Settlement Agreement, is the best Class Notice practicable under the circumstances. The parties' proposed forms of Class Notice are reasonable given that: (a) publication notice is being specifically targeted for circulation in the Subject ATMs' vicinity; (b) a detailed notice which includes the full Settlement Agreement, the complaint, and other court documents is being published on the Internet; and (c) notice is also being posted on the ATMs that are the subject of this litigation.

12. Direct notice to the non-customer account holders who were charged a fee is not practical because Defendant does not obtain sufficient personal identifying information relating to non-customer cardholders in connection with processing ATM transactions. Defendant merely obtains a portion of the card number for such non-customer transactions, from which it can determine the issuing institution. Defendant is not provided and cannot ascertain the cardholder's name, address, or any other personal identifying information, including whether the cardholder is a business or consumer. Other federal courts have recognized the impracticability of providing individual notice in the context of such EFTA class actions. For example, in *Mowry v. JP Morgan Chase Bank, N.A.*, 2007 U.S. Dist. LEXIS 44222 (N.D. Ill. June 19, 2007), the court emphasized:

> In the instant action, the only identifying information associated with the approximately twenty million transactions in question are the sixteen digit personal account numbers ("PAN") that Chase's ATMs record during each withdrawal. These PANs consist of a six digit code identifying the bank that the cardholder has an account with, and a ten digit personal identification number, which is known only to each respective bank. Due to the vast number of transactions involved in a potential class action, identifying the financial institutions that are not affiliated with Chase in order to identify the potential class members will be difficult. In addition, once a financial institution that is not affiliated with Chase is properly identified and contacted, that financial institution is not likely to be willing to share identity information for security and privacy reasons. Further, even if financial institutions that are not affiliated with Chase are willing to identify and locate potential class members, the financial institutions may be unable to do so if the potential class members no longer hold accounts with the financial institution. Attempts to identify the potential class members individually will

undoubtedly result in prolonged litigation, and even then it is likely that a large number of potential class members will be left out. Id. at *17-19.

13. The parties note that the Settlement Agreement is identical in all relevant respects to the Settlement Agreement in *Harrison v. Flagstar Bank*, Case No. 09-cv-12687-JCO-DAS, for which this Court granted preliminary approval at a hearing on February 10, 2011.

14. In addition to the agreed-upon forms of notice, the parties have also agreed on a form of a proposed Preliminary Approval Order (Exhibit E to the Settlement Agreement) and a proposed Final Approval Order (Exhibit F to the Settlement Agreement).

WHEREFORE, for the foregoing reasons, the parties request that this Court enter an order: (1) certifying the proposed Settlement Class for settlement purposes only; (2) preliminarily approving all terms and conditions of the proposed Class Action Settlement Agreement and Release; (3) approving and directing Class Notice to the Class Members; and (4) setting dates for submitting claims, exclusions, objections and a Final Approval Hearing.

Dated: October 8, 2010                                   Respectfully submitted:

| GEOFFREY BESTOR, ESQ.<br><br>/s/ Geoffrey Bestor<br>4204 Maple Terrace<br>Chevy Chase, MD 20815<br>(240) 463-8503<br>Email: gbesq@bestorlaw.com<br><br>Counsel for Plaintiff | GERALD VAN WYKE, P.C.<br><br>By: /s/ Gerald Van Wyke<br>5440 Corporate Drive, Suite 250<br>Troy, Michigan 48098-2648<br>Tel. (248) 641-7000<br>Email: jwv@uferspan.com<br><br>Counsel for Defendant |
|---|---|
| | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on this 17th day of May, 2011, that he filed Joint Motion to Preliminary Approval of a Class Action Settlement in the Court's ECF system, thereby causing a copy of the same to be served upon counsel for all parties in this matter by email at the email addresses designated in the records of the Court.

_____/s/_____<br>
Geoffrey Bestor